UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WALTER ANDRES BARRIOS OSORIO,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, Northwest Immigration and Customs Enforcement Processing Center, et al.,<br><br>Respondents. | CASE NO. 2:26-cv-02868-TL<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |

This matter is before the Court on Petitioner Walter Andres Barrios Osorio's Petition for Writ of Habeas Corpus. Dkt. No. 1. Having reviewed the petition, Respondents' Return (Dkt. No. 9), Petitioner's Traverse (Dkt. No. 14), and the relevant record, the Court GRANTS the petition and ORDERS Petitioner's release.

## I. BACKGROUND

Petitioner, proceeding pro se, is a noncitizen detained at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") in Tacoma, Washington. *See* Dkt. No. 1 at 1. He challenges the legality of his detention and seeks a writ of habeas corpus. *See generally id.*; Dkt. No. 2 (memorandum in support of petition).

Petitioner previously sought a writ of habeas corpus on the ground that he was incorrectly

classified as subject to mandatory detention under 8 U.S.C. § 1225(b) and, consequently, improperly denied the opportunity to seek release on bond. *Barrios Osorio v. Bondi*, No. C26-317, 2026 WL 607765, at *1 (W.D. Wash. Mar. 4, 2026). His petition was granted, and the district court ordered the respondents to either release Petitioner or provide him a bond hearing under 8 U.S.C. § 1226(a). *Id.* at *4.

A bond hearing was held for Petitioner on March 12, 2026, and Petitioner was denied bond on the basis that he poses a flight risk and/or a danger to the community. Dkt. No. 11-5 (Order of the Immigration Judge ("IJ")) at 2. In the present action, Petitioner alleges that his detention is unlawful on five grounds: first, that "Petitioner's prolonged detention is no longer reasonably related to its purpose and violates the due process clause of the Fifth Amendment" (Dkt. No. 1 at 14); second, that "because Petitioner has no criminal record or conviction, his continued detention serves no legitimate nonpunitive purpose and is unconstitutionally punitive" (*id.*); third, that "the March 12, 2026, bond hearing did not provide constitutionally adequate, individualized determination" (*id.* at 16); fourth, that "fundamental fairness requires an evidentiary hearing and disclosure of available body-worn camera recordings of the August 26, 2025, search before its fruits may continue to justify detention" (*id.*); and fifth, that "Petitioner's pending Form I-130 and pending BIA appeal confirm that removal is not reasonably foreseeable, further rendering continued detention unreasonable" (*id.* at 17). Because the Court determines that Petitioner's third ground—regarding the adequacy of his bond hearing—is meritorious, the Court declines to consider the other four.

## II. Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance

of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

## III. DISCUSSION

### A. Administrative Exhaustion

The Ninth Circuit requires, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). "The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts in the Ninth Circuit consider the *Puga* factors when determining if prudential exhaustion is required, which include whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). Even if the *Puga* factors establish that administrative exhaustion is required, a court may waive the exhaustion requirement if a petitioner demonstrates that one of the so-called *Laing* factors applies. These factors include whether: (1) "administrative remedies are inadequate or not efficacious"; (2) "pursuit of administrative remedies would be a futile gesture"; (3) "irreparable injury will result"; or (4) "the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)).

In the instant matter, the Court waives the administrative exhaustion requirement, because Petitioner will face irreparable injury if he were to follow Respondents' suggestion and wait until the BIA rules on his administrative appeal before proceeding with his habeas petition. *See* Dkt. No. 9 at 9). It is well established that BIA review is lengthy. *See Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1100 (W.D. Wash. 2026) (finding that statistics from 2026 show that the BIA appeal process is currently "substantially longer" than it was in 2024, when exhausting an administrative appeal required more than six months). Pursuing this path will result in irreparable injury, because Petitioner will remain in detention during this six-plus-month period, during which time his documented thoracic-spine issue will suffer from the conditions inherent to confinement. Petitioner asserts that, while in detention, he has not received medical care needed to "manage his chronic pain," and that he is "generally seen by nursing personnel rather than physicians." Dkt. No. 14 at 8. Therefore, Petitioner has met his burden of demonstrating that irreparable injury will result if she were required to go through the BIA appeals process. *See Vasquez Lopez*, 830 F. Supp. 3d at 1101 (applying third *Laing* factor where petitioner was "not in good health"); *cf. Calderon v. Mullin*, No. C26-1512, 2026 WL 1487774, at *3 (W.D. Wash. May 28, 2026) (finding third *Laing* factor inapplicable where Petitioner "d[id] not show that a medical condition . . . would be worsened if he were required to wait for agency review"); *see Hernandez*, 872 F.3d at 995 (noting "subpar medical . . . care in ICE detention facilities"). These same facts also support a finding that administrative remedies are not efficacious.

The Court thus waives the administrative exhaustion requirement.

**B. Adequacy of Petitioner's Bond Hearing**

On March 12, 2026, Petitioner's bond hearing was held before IJ Tammy Fitting in Tacoma Immigration Court. Dkt. No. 11-6 (hearing transcript). The Court reviews the

prosecution of Petitioner's bond hearing for an IJ's abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). Under an abuse-of-discretion standard, the court "cannot reweigh evidence, but can only determine whether the immigration court applied the correct legal standard." *Id.* at 785 (citation modified). "When examining any evidentiary proceeding and the adjudicator's opinion, there are at least two ways to challenge whether the adjudicator applied the correct standard of proof." *Tavurov v. Noem*, No. C26-668, 2026 WL 1283513, at *6 (W.D. Wash. May 11, 2026) (quoting *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019)). "First, a challenge may be based on the contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion." *Id.* (quoting *Hechavarria*, 358 F. Supp. 3d at 240). "Second, it may be clear from the adjudicator's opinion itself that [they] simply did not apply the correct standard to the facts." *Id.* (quoting *Hechavarria*, 358 F. Supp. 3d at 240). Both types of challenge are relevant here.

In granting Petitioner's original habeas petition, the district court charged Respondents with "establishing, by clear and convincing evidence, that [Petitioner] presents a flight risk or danger to the community at the time of the bond hearing." *Barrios Osorio*, 2026 WL 607765, at *4. Given the evidence cited and the relevant law, the IJ's rationale for denying Petitioner's bond here is neither clear nor convincing.

"To determine whether a [noncitizen] is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent." *Martinez*, 124 F.4th at 783. These so-called "*Guerra* factors" include:

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment

> history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Id.* (quoting *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

Here, the IJ did not properly apply the clear-and-convincing standard to the evidence on the record. Although the IJ's written order asserts that the immigration court "considered all the [*Guerra*] factors presented[,]" the evidence brought to bear in her consideration was applied in a manner sufficiently haphazard such that any conclusions drawn aggregate to something substantially less than clear and convincing. Dkt. No. 11-7 ("IJ Decision") at 5. The meat of the IJ's three-page order comes by way of a single paragraph. In her order, the IJ wrote:

> [Petitioner] is a 40-year-old man from El Salvador. [Petitioner] claims his spouse has work authorization but there is no evidence that he is legally married. If released he would live with his 27-year-old stepson in Edmonds, Washington. He does not have any property. He provided one letter of support and a list of several places where he worked. He does not claim children of his own. He is current [*sic*] unemployed. The respondent has limited time and ties in the United States. He did not applications [*sic*] for protection until he was placed in immigration custody. Another Immigration Judge denied the applications for asylum, withholding, and Convention Against Torture on November 6, 2025. [Petitioner] was ordered removed to El Salvador.

Dkt. No. 11-7 at 4. Additionally, the IJ devoted substantial space in the order to discussion of a Drug Enforcement Administration ("DEA") raid on Petitioner's residence, which resulted in DEA's seizing certain pieces of evidence, but which—as Respondents conceded at the hearing—ultimately resulted in no charges filed against Petitioner. *See id.* at 3, 4–5.

This analysis contains several questionable applications of the proper legal standard. As to the first *Guerra* factor, the IJ noted only that Petitioner "does not have any property." Dkt.

No. 11-7 at 4. It is unclear, however, how this is relevant in light of *Guerra*. Equity is not a factor in a *Guerra* analysis, and that case's express emphasis on "fixed address" and "residence" indicates that what the first and second factors are really interrogating is the *existence* of a noncitizen's home, not their ownership thereof. Moreover, the IJ wrote that, "If released [Petitioner] would live with his 27-year-old stepson in Edmonds, Washington." *Id.* This would appear to be a fixed address, or at least something very nearly approaching one.

As to the second factor, the IJ found that Petitioner has "limited time and ties in the United States." *Id.* Petitioner's Form I-213 states that Petitioner's date of entry into the United States is "unknown." Dkt. No. 11-1 at 2. At Petitioner's bond hearing, however, Respondents' counsel advised the IJ that Petitioner had entered the United States eight years ago, in 2018. Dkt. No. 11-6 at 4. The Court presumes that the IJ intended for "limited" to be synonymous with "short," but eight years is, in this context, not a short amount of time. *See, e.g.*, *Abdelmasseh v. Scott*, No. C26-1681, 2026 WL 1815279, at *4 (W.D. Wash. June 24, 2026) (finding IJ's failure to explain why a petitioner's 1 1/2 years of residence in the United States rendered him a flight risk undermined a flight-risk finding); *Khalifa v. Hernandez*, No. C26-3260, 2026 WL 2969149, at *3 (W.D. Wash. Oct. 2, 2026) (finding that "'only' three years' residence does not solely support a flight-risk finding").

As to the third factor, although Petitioner's family ties are certainly few—or, as the IJ put it, "limited"—the IJ nevertheless recognized that Petitioner purports to be married and to have an adult stepson. *See* Dkt. No. 11-7 at 4. These are concrete family ties, and beyond pointing out that "there is no evidence that [Petitioner] is legally married," the order does not explain why they are not. *Id.* Indeed, a mother, son, and stepfather who live together under one roof is, simply put, a *family*. The IJ's implicit and unexplained determination that Petitioner's nuclear family, without additional "ties," somehow lacks legitimacy, is questionable at best. That Petitioner has a

stepson who is willing to board Petitioner upon his release from detention is certainly indicative of some existing bond between Petitioner and the two individuals he has identified as family; the IJ's legalistic dismissiveness of these relationships ignores this basic conclusion. Of course, the Court cannot quibble with the IJ's individual finding that, notwithstanding Petitioner's relationships to his wife and stepson, the third *Guerra* factor points toward a risk of flight, as there was no evidence of whether Petitioner's family ties may entitle him to reside permanently in the United States in the future. *See id.* at 4–5. But as discussed herein, in light of the other eight factors, this singular finding is insufficient to surmount the clear-and-convincing standard, especially given the lack of elaboration on how "limited" necessarily means insufficient.

As to the fourth factor, the finding that Petitioner is unemployed is unremarkable, given that Petitioner has been in immigration detention since August 2025, and especially given the IJ's recognition that, prior to his detention, Petitioner had worked at "several places." *Id.* That is to say, Petitioner might not be *employed* while he is detained at NWIPC, but he is demonstrably *employable* when he is not. Respondents provided no evidence to refute Petitioner's testimony that, prior to his detention, he "work[ed] every day, Monday through Saturday, from six to six in the afternoon." Dkt. No. 11-6 at 9. "The IJ either did not consider this evidence or discounted it without explanation. This was an abuse of discretion, and particularly where the Government has to prove risk of flight by 'clear and convincing' evidence." *Jabib Claros v. Albarran*, No. C25-9473, 2026 WL 2364813, at *7 (N.D. Cal. Aug. 14, 2026).

As to the fifth factor, the IJ neglected to consider it, mentioning instead that Petitioner "did not applications [*sic*] for protection until he was placed in immigration custody." Dkt. No. 11-7 at 4. What this has to do with Petitioner's record of appearance in court—the specific factual inquiry of the fifth factor—is unclear, and the order does not provide any explanation or enlightenment on the issue.

As to the sixth factor, the IJ discusses Petitioner's alleged involvement in drug trafficking. *See id.* at 3, 4–5. But none of this discussion—a description of the DEA's investigation of a "Drug Trafficking Organization (DTO) operating in the Western District of Washington" and a cataloguing of evidence seized from the house in which Petitioner was renting a room—amounts to consideration of Petitioner's "criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses," because, as Respondents' counsel admitted at Petitioner's hearing, "[t]he charges are not sustained" (*see* Dkt. No. 11-6 at 5). Petitioner does not maintain a criminal record merely because the Department of Homeland Security ("DHS") "has reason to believe he was involved in drug trafficking." *Id.*; *see Santiago Castro v. Mattos*, No. C26-1283, 2026 WL 1759561, at *3 (D. Nev. June 18, 2026) ("[T]he IJ abused his discretion in finding that Petitioner was dangerous because he 'committed another DUI' when the record evidence showed that he was never charged with that offense."). Given that "*Guerra* contemplates that criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness," and that "not every criminal record would support a finding of dangerousness," *Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011), DHS's "reason to believe" falls far short of anything clear and convincing. Dkt. No. 11-6 at 5.

Moreover, the Department of Justice's ("DOJ") inconsistent positions on Petitioner's supposed criminal record are troubling. One DOJ attorney, who presented Respondents' case at Petitioner's bond hearing, represented that "[t]he [drug-trafficking] charges are not sustained[.]" Dkt. No. 11-6 at 5. This crucial fact appears to have been quickly overlooked, however, as another DOJ attorney, in responding to the instant habeas action, referred to the IJ's "consider[ation] [of] Petitioner's . . . previous charge for drug trafficking" (Dkt. No. 9 at 10), despite their colleague's prior admission that the charges were not sustained. And a third—the IJ

herself—(1) noted that "DHS . . . alleged that [Petitioner] is an illicit trafficker of a controlled substance, or [was] or has been a knowing assister, abettor, conspirator, or colluder with others in the illicit trafficking of a controlled substance" (Dkt. No. 11-7 at 3); (2) meticulously described (twice) drug-trafficking paraphernalia removed from Petitioner's residence during a DEA raid (*id.* at 3, 5); and (3) wrote that Petitioner "denied any involvement and claims he was only renting a room" (*id.* at 5). In light of the fact that Petitioner remains uncharged, and considering that the relevant *Guerra* factor considers the noncitizen's criminal record, the IJ's discussion of what DEA agents found at Petitioner's residence—a body of evidence that, it turns out, led to no criminal charges—does little more than indulge in lurid detail, smear Petitioner despite Respondents' attorney's representation to the IJ that the charges had not been sustained, and evince prejudice.

As to the seventh and ninth factors, the IJ notes, without elaboration, that Petitioner "entered the United States without being admitted or paroled by an Immigration Officer." Dkt. No. 11-7 at 3.

Finally, as to the eighth factor, the IJ is silent with respect to any attempts Petitioner might have made to flee prosecution or escape from authorities, an omission that makes sense given that no evidence was presented by Respondents to support this factor at the hearing. *See generally* Dkt. No. 11-6.

In sum, the body of evidence pointing toward a bond denial consists of Petitioner's failure to maintain more than two family connections in the United States (factor three), and Plaintiff's single unlawful entry into the United States, for which he was ordered removed (factor nine). This is a molehill, not a mountain, and it is decidedly not clear and convincing.

**C. Appropriate Remedy**

District courts have "a fair amount of flexibility" in fashioning specific habeas relief.

*Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1081 (W.D. Wash. 2026). Here, Petitioner was denied due process of law and kept in detention based on a legally erroneous dangerousness and/or flight risk finding. In line with other courts in this District, and given the present circumstances, "the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy." *Soriano*, 830 F. Supp. 3d at1081 (W.D. Wash. 2026); *see also Tavurov*, 2026 WL 1283513, at *10 (finding IJ abused discretion in denying bond and ordering immediate release); *Loya Medina v. Hernandez*, No. C26-772, 2026 WL 1260848, at *8–9 (W.D. Wash. May 7, 2026) (same); *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026) (same). Accordingly, the Court ORDERS Petitioner's immediate release.

## IV. CONCLUSION

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) is GRANTED. It is further ORDERED:

(1) Respondent, the Government, and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(a) SHALL release Petitioner from detention **within twenty-four (24) hours** of this Order under appropriate conditions of release;

(b) SHALL submit to the Court, **within forty-eight (48) hours** of Petitioner's release from detention, a declaration or status report confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

Dated this 27th day of October, 2026.

Tana Lin
United States District Judge